UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LANE WOODS,

                    Plaintiff,

    -against-                                    5:16-CV-0007 (LEK/TWD)

TOMPKINS COUNTY,

                    Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Lane Woods commenced the present action against Defendant Tompkins County (the "County") as well as Stafkings Health Care Systems, Inc. ("Stafkings")[1] on January 4, 2016, alleging discrimination and failure to accommodate her disability pursuant to the Americans with Disabilities Act (the "ADA"). Dkt. No. 1 ("Complaint") ¶ 1. Plaintiff requests that the County reinstate her aide care and that the Court award damages for pain and suffering as well as for the discrimination she has endured due to her disability. Dkt. No. 11 ("Amended Complaint") at 4. Presently before the Court is the County's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 16 ("Motion"). For the following reasons, Defendant's motion is denied.

---

[1] Stafkings was terminated as a defendant in a Decision and Order dated February 29, 2016. Dkt. No. 10.

## II.  BACKGROUND[2]

At the time Plaintiff filed her Amended Complaint, she was sixty-eight years old and wheelchair bound, with arthritic malformations of her knees. Am. Compl. ¶ 4. She has two artificial shoulders, one of which is permanently dislocated, and nine herniated discs in her spine. Id. Additionally, Plaintiff has a degenerative disc disease, multiple tumors on her spine, and a congenital defect of her lumbar sacral region. Id. Plaintiff also reports that she has severe sleep apnea requiring oxygen supplementation, complex post-traumatic stress disorder ("PTSD"), obsessive compulsive disorder, "severe venous insufficiency of the lower legs, a history of stroke, diabetes, and paroxysmal atrial fibrillation of the heart." Id.

Plaintiff alleges that Defendant has "refus[ed] to provide a Personal Care Aide" to her since October 2, 2015, causing her "physical and mental harm and pu[tting her] at risk of institutional placement," and that Defendant "committed discrimination under" the ADA. Id. at 2. Plaintiff explained that the County had provided her up to forty hours of aide service weekly from May 6, 2014, until she lost an aide on October 2 without notice. Id. ¶¶ 7–8. After that, the County's contractor, Stafkings, said the County could not find a replacement aide. Id. ¶ 8. Plaintiff notes that during 2012, Plaintiff did not have an aide for eight weeks, which caused her to be depressed and in constant pain. Id. ¶ 12. During that time, she attempted suicide, which left

---

[2] This case is before the Court at the motion to dismiss stage, so the Court must consider all plausible factual allegations pleaded in the Amended Complaint as true. Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011). Furthermore, as Plaintiff is proceeding pro se, Plaintiff's Amended Complaint "must be construed liberally and interpreted to raise the strongest arguments that [it suggests]." Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

her in the ICU for five days. Id. The County and Stafkings are aware of Plaintiff's attempted suicide and hospitalization. Id.

Plaintiff filed for a fair hearing with the Department of Social Services pursuant to New York Social Services Law section 22, but due to an error in the department's notice to the County, the judge granted the County an adjournment of unspecified length. Id. ¶ 11.

Since being left without an aide, Plaintiff received a second-degree burn while attempting to cook, suffered an increased amount of pain from attempting housekeeping on her own, and experienced an increase in her blood pressure. Id. ¶ 13. Additionally, Plaintiff claims that her PTSD, insomnia, edema in her lower legs, and anxiety have gotten worse. Id. Plaintiff has been assessed as clinically depressed and has had thoughts of suicide. Id. Plaintiff moved from Trumansburg to Ithaca on January 12 in order to get an aide but was told by the County Nurse that the County still could not find her one.[3] Id. ¶ 16.

Plaintiff filed her Complaint against the County and Stafkings on January 4, 2016. Compl. On February 29, 2016, the Court adopted U.S. Magistrate Judge Thérèse Wiley Dancks's Report-Recommendation in its entirety, dismissing Plaintiff's claim against Stafkings without leave to amend and leaving the County as the sole Defendant. Dkt. Nos. 5 ("Report-Recommendation"); 10 ("February Order"). The February Order also granted Plaintiff's January 29, 2016 motion to amend her Complaint. Dkt. No. 9; Feb. Order. Plaintiff's Amended Complaint drops Stafkings as a defendant and corrects a typographical error in her prayer for relief, changing "$500,00" to "$500,000." Am. Compl. at 4.

---

[3] While Plaintiff did not provide the year that she moved in her Amended Complaint, the Court assumes that Plaintiff moved on January 12, 2016.

Defendant submitted the present Motion on April 26, 2016. Mot. Plaintiff filed a Response on May 11, 2016, as well as a motion to appoint counsel. Dkt. Nos. 17 ("Response"); 18 ("Counsel Motion"). Magistrate Judge Dancks denied Plaintiff's Counsel Motion without prejudice on May 23, 2016. Dkt. No. 19.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). "The factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that he is entitled to relief and the action is subject to dismissal. See id. at 678–79.

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court . . . ." McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009) (citing McDonnell Douglas Corp. v.

4

Green, 411 U.S. 792 (1973)); see also Brown v. County of Nassau, 736 F. Supp. 2d 602, 612–13 (E.D.N.Y. 2010) (holding that the burden-shifting requirement extends to claims under Title II of the ADA); Ali v. Hogan, No. 12-CV-104, 2014 WL 6810712, at *5 (N.D.N.Y. Dec. 2, 2014) (same). "In order for plaintiff to prove a violation of Title II, the plaintiff must establish the following: (1) that plaintiff is a '"qualified individual" with a disability'; (2) that the defendant is subject to Title II; and (3) that plaintiff was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disabilit[y].'" Brown, 736 F. Supp. 2d at 611 (alterations in original) (quoting Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004)); accord Ali, 2014 WL 6810712, at *5.

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendant argues that the instant action is premature, as Plaintiff has not had her requested fair hearing yet. Defendant cites to New York Social Services Law section 22, which states that eligible persons "may appeal to the department from decisions of social services officials or failures to make decisions upon grounds specified." N.Y. Soc. Serv. Law § 22. However, Plaintiff is bringing this suit under title II of the ADA. Am. Compl. ¶ 1. Title II of the ADA was modeled after section 504 of the Rehabilitation Act, and, "[b]y statute, remedies for violations of the ADA and the Rehabilitation Act are co-extensive with each other, and are linked to Title VI of the Civil Rights Act of 1964." C.O. v. Portland Public Schs., 406 F. Supp. 2d 1157, 1163 (D. Or. 2005) (citations omitted); accord Ferguson v. City of Phoenix, 157 F.3d 668, 673 (9th Cir. 1998). Because of the ties between title II of the ADA, section 504 of the Rehabilitation

Act, and title VI of the Civil Rights Act of 1964, there is no requirement of exhaustion of administrative remedies when a case is brought under title II of the ADA. See Smith v. Barton, 914 F.2d 1330, 1338 (9th Cir. 1990) ("[P]rivate plaintiffs suing under section 504 need not first exhaust administrative remedies."); Kling v. Los Angeles County, 633 F.2d 876, 879 (9th Cir. 1980); see also Finley v. Giacobbe, 827 F. Supp. 215, 219 n.3 (S.D.N.Y. 1993) ("Because plaintiff's claim has been brought under Title II . . . of the ADA there is no requirement that she exhaust administrative remedies prior to suing in federal court."). Therefore, Plaintiff need not have a fair hearing before bringing this action in federal court under title II of the ADA.

**B. Failure to State a Claim**

*1. Discrimination Based upon Disability*

Plaintiff brings this action pursuant to the ADA, alleging discrimination based upon her disability and failure to accommodate her disability. "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court . . . ." McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); see also Brown v. County of Nassau, 736 F. Supp. 2d 602, 612–13 (E.D.N.Y. 2010) (holding that the burden-shifting requirement extends to claims under Title II of the ADA); Ali v. Hogan, No. 12-CV-104, 2014 WL 6810712, at *5 (N.D.N.Y. Dec. 2, 2014) (same).

To make a prima facie case of disability discrimination under title II of the ADA, "a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to [the ADA]; and (3) he was denied the opportunity to participate in or benefit from defendant's services, programs, or activities, or was otherwise discriminated against by defendant

because of his disability." McElwee v. County of Orange, 700 F.3d 635, 640 (2d Cir. 2012); accord Ali, 2014 WL 6810712, at *5.

Plaintiff has plausibly alleged that she is a qualified individual with a disability. See Am. Compl. ¶ 4; see also Quezada v. Fischer, No. 13-CV-885, 2016 WL 1118451, at *5 n.22 (N.D.N.Y. March 22, 2016) (accepting plausible allegations regarding hearing impairments as well as knee and back disabilities). Plaintiff also pleads that the County "is a covered entity under Title II of the [ADA]." Am. Compl. ¶ 5. However, the facts that Plaintiff alleges in her Amended Complaint do not establish that the County failed to provide her an aide because of discriminatory animus or ill will based on Plaintiff's disability. Plaintiff has alleged that Stafkings, the contractor of Tompkins County, claimed that "they 'cannot find' [her] an aide, and both the County and the agency pressur[ed her] to leave the program and go off independently and find [her] own aide." Id. ¶ 9. Plaintiff, however, has not alleged that the County did not provide her an aide because of discriminatory intent.

Instead, Plaintiff alleges that Defendant engaged in per se discrimination by putting Plaintiff at risk of being institutionalized. Plaintiff cites Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581 (1999), to support her argument that "[b]y refusing to provide a Personal Care Aide" to her, the County has caused her "physical and mental harm and put [her] at risk of institutional placement." Id. ¶ 5. Mindful of the Court's duty to construe the Amended Complaint liberally, Plaintiff does plausibly allege that by not being provided a personal care aide, she is at risk of being institutionalized. Plaintiff cites to Pashby v. Dalia, 709 F.3d 307 (4th Cir. 2013), in her

Response.[4] Resp. at 3. The court in Pashby noted that "the Supreme Court held that 'unjustified institutional isolation of persons with disabilities is a form of discrimination.'" 709 F.3d at 321 (quoting Olmstead, 527 U.S. at 600). Pashby held that "individuals who must enter institutions to obtain Medicaid services for which they qualify may be able to raise successful Title II . . . claims because they face a risk of institutionalization." Id. at 322; see also Fisher v. Okla. Health Care Auth., 335 F.3d 1175, 1181 (10th Cir. 2003) ("[N]othing in the plain language of the regulations . . . limits protection to persons who are currently institutionalized."). "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). Olmstead held that "discrimination forbidden under Title II of the ADA includes '[u]njustified isolation' of the disabled." Fisher, 335 F.3d at 1181 (alteration in original) (quoting Olmstead, 527 U.S. at 597)). "Unjustified isolation . . . is properly regarded as discrimination based on disability." Olmstead, 527 U.S. at 597.

Plaintiff claims that by not being provided a personal care aide, she is at risk of institutionalization, as she has suffered "regression" and increased pain, is having difficulty cooking for herself, and is not getting necessary medical treatment. Resp. at 3. Defendant claims that Plaintiff's reliance on Olmstead is misguided, arguing that there "is no relationship between Olmstead and the instant case," Mot. at 5, and that the failure to provide Plaintiff a personal care aide was not due to her disability, id. at 4. However, this argument was "summarily rejected by

---

[4] "[T]he mandate to read the papers of pro se civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint." Robles v. Bleau, No. 07-CV-464, 2008 WL 4693153, at *2 (N.D.N.Y. Oct. 22, 2008).

the Supreme Court in Olmstead." See Haddad v. Dudek, 784 F. Supp. 2d 1308, 1323 (M.D. Fla. 2011).

"[U]nder the Americans with Disabilities Act 'unnecessary institutional segregation of the disabled constitutes discrimination *per se*, which cannot be justified by a lack of funding.' The [district court in Olmstead] recognized that segregation of individuals with disabilities is a form of discrimination that Congress intended to eliminate, 42 U.S.C. § 12101(a)(2), (3), (5), and that regulations promulgated by the Attorney General to implement Title II prohibit unnecessary institutionalization." Cramer v. Chiles, 33 F. Supp. 2d 1342, 1354 (S.D. Fl. 1999) (quoting L.C. v. Olmstead, 1997 WL 148674 (N.D. Ga. 1997)). As Olmstead held that risk of institutionalization is per se discrimination based on disability, the Court finds that Plaintiff's Amended Complaint states a prima facie case of discrimination. As a result, Defendant's motion to dismiss with respect to Plaintiff's discrimination claim is denied.

### 2. Failure to Accommodate

Plaintiff additionally claims that the County failed to accommodate her disability. "[T]he individualized inquiry requirement is applicable to failure to accommodate actions under Title II of the ADA." Wright v. N.Y. State Dep't of Corrs., No. 15-CV-3168, 2016 WL 4056036, at *8 (2d Cir. 2016). In evaluating failure-to-accommodate claims, a court is to consider "whether a plaintiff with disabilities 'as a practical matter' was denied 'meaningful access' to services, programs or activities to which he or she was 'legally entitled.'" Id. at 4 (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003)). "A plaintiff alleging that he was denied a reasonable accommodation [under Title II] bears the burdens of both production and persuasion

9

as to the existence of some accommodation that would allow him to meet the essential eligibility requirements of the service, program, or activity at issue." McElwee, 700 F.3d at 642.

"The plain language of Title II provides that a public entity may not deny a person the opportunity to take advantage of 'services, programs, or activities' because of his disabilities. The Second Circuit has said that 'services, programs, or activities' 'is a catch-all phrase that prohibits all discrimination by a public entity, regardless of context[.]'" Levesque v. Clinton County, No. 10-CV-787, 2012 WL 6948779, at *6 (N.D.N.Y. Dec. 28, 2012) (citations omitted) (quoting Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 45 (2d Cir. 1997), overruled on other grounds by Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 171 n.7 (2d Cir. 2001)), adopted, 2013 WL 316770 (N.D.N.Y. Jan. 28, 2013). The Court, "[m]indful of the Second Circuit's broad construction of the phrases 'services, programs, or activities," Levesque, 2012 WL 6948779, at *6, finds that the provision of a home health aide does not appear to be reasonably related to any opportunities to take advantage of such services, programs, or activities provided by the County. To the extent that those services, programs, or activities are based on Plaintiff's right to be free from institutionalization, this claim would be duplicative of Plaintiff's surviving Olmstead claim, discussed above.

To the extent that Plaintiff asserts a denial of accommodation based on the refusal of her legislator to read remarks regarding her situation into the minutes of a legislative session, the Court finds that Plaintiff has not sufficiently alleged facts that indicate that the denial of her request was based on her disability. While she does state that "the legislative meeting is scheduled at a time when no wheelchair transportation is available," Am. Compl. ¶ 14, she has not indicated whether her legislator provided any reasons for his denial and what he was aware of

regarding her disability. Plaintiff's claims regarding Defendant's failure to accommodate are therefore dismissed. Plaintiff is advised that this dismissal is without prejudice; that is, she can move to amend her complaint to reallege these claims with additional supporting facts.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 16) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Plaintiff's failure-to-accommodate claim is **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    September 20, 2016
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge